1  Gary Hunt, Esq., Pa. I.D. #23556 *Pro Hac Vice Pending*
   Shane Miller, Esq., Pa. I.D. #319174, *Pro Hac Vice Pending*
2  Tucker Arensberg, P.C.
   1500 One PPG Place
3  Pittsburgh, PA 15222
   Telephone: 412.566.1212
4

5  Shireen M. Becker (State Bar No. 237930)
   Mhairi L. Whitton (State Bar No. 260173)
6  Michael F. Gosling (State Bar No. 305845)
   JONES DAY
7  12265 El Camino Real, Suite 200
   San Diego, CA  92130.4096
8  Telephone:  +1.858.314.1200
   Facsimile:  +1.858.314.1150
9  Email:      sbecker@jonesday.com
               mwhitton@jonesday.com
10             mgosling@jonesday.com

11 Attorneys for Plaintiff
   EILEEN FORD-FAHERTY
12

13              UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

| 16 | EILEEN FORD-FAHERTY, | Case No. **'16CV1145 MMA DHB** |
|---|---|---|
| 17 | Plaintiff, | **COMPLAINT FOR PRELIMINARY INJUNCTION** |
| 18 | v. | |
| 19 | WORLD ARCHERY FEDERATION, USA ARCHERY, AND THE UNITED STATES OLYMPIC COMMITTEE, | |
| 20 | | |
| 21 | Defendants. | |

22

23   **COMPLAINT IN EQUITY FOR PRELIMINARY INJUNCTIVE RELIEF**

24        1.    Plaintiff Eileen Ford-Faherty ("Plaintiff") is a resident of the County

25   of Houston in the State of Georgia.

26        2.    The World Archery Federation ("WAF") is the international governing

27   body for the sport of archery, and is headquartered in Lausanne, Switzerland.

28        3.    WAF sets the rules and regulations for international archery

1
COMPLAINT FOR PRELIMINARY INJUNCTION

competitions.

4.     WAF also organizes archery competitions in the United States and around the world, including the upcoming 2016 Paralympic Games in Rio De Janeiro, Brazil.

5.     USA Archery ("USAA") is the national governing body for the Olympic and Paralympic sport of archery, and is headquartered in Colorado Springs, Colorado.

6.     USAA is holding a trial event for paralympic archery on May 14, 2016 in Chula Vista, California.

7.     The United States Olympic Committee ("USOC") is the National Paralympic Committee for the United States, and is headquartered in Colorado Springs, Colorado.

8.     USOC is responsible for the training, entering, and funding of U.S. teams for the Paralympic Games.

9.     This court has jurisdiction pursuant to 28 U.S.C. § 1331 because this matter involves due process issues under the federal Constitution.

10.    Venue is proper under 28 U.S.C. § 1391(b)(2) because the paralympic qualifying event that gives rise to this claim is being held on May 14, 2016 in Chula Vista, California.

11.    Plaintiff suffers from a chronic, degenerative disc condition in her lower back and spine, Crohn's Disease, Ehlers-Danlos Syndrome, and fibromyalgia.

12.    These diseases cause severe pain in Plaintiff's back, elbows, knees, ankles and hips.

13.    Plaintiff also suffers from leg numbness and partial paralysis, hand weakness and numbness, severe neck impairment, and joint stiffness.

14.    Plaintiff has undergone several major operations to deal with her impairments, including three spinal fusion surgeries.

15. In 2005, Plaintiff underwent her first spinal fusion surgery shortly after she became partially paralyzed.

16. In December 2011, Plaintiff underwent her second spinal fusion surgery.

17. In December 2013, Plaintiff underwent her third spinal fusion surgery.

18. Due to Plaintiff's leg numbness and partial paralysis, she must use a cane to walk short distances.

19. Plaintiff requires a wheelchair for long distances.

20. Beginning in 2010, Plaintiff began competing as a paralympic archer in the Women's Standing Recurve event.

21. Since that time, Plaintiff has become one of the best female paralympic archers in the United States.

22. In 2011, Plaintiff finished ninth at the World Championships.

23. Later that year, Plaintiff finished first in the Parapan American Games in Guadalajara, Mexico.

24. In 2012, Plaintiff qualified for and competed in the Paralympic Games in London, England.

25. In 2013, Plaintiff finished sixth in the World Archery Para Championships.

26. In 2014, Plaintiff finished first at the Parapan American Championships.

27. In April 2015, Plaintiff won the gold medal at the prestigious Arizona Cup.

28. Until 2015, Plaintiff was the top-ranked woman in the Para Women Recurve rankings.

29. Since Plaintiff began competing as a paralympic archer in 2010, she has participated in several "classification sessions."

30. In these sessions, "examiners" from the WFA examine each

prospective athlete, and assign points for each impairment or disability that they have.

31. Athletes must obtain twenty-five points to be eligible to compete in paralympic events.

32. The WFA conducts these classification sessions under the International Paralympic Committee Classification Code and International Standards ("IPC Code").

33. USAA and the USOC abide by the WFA's findings.

34. Paralympic athletes thus cannot compete in USAA or USOC competitions unless they meet the WFA's disability standards.

35. In every classification session that occurred before August 2015, Plaintiff was found to have a disability that met the criteria necessary to compete in paralympic archery events.

36. On June 25, 2012, Plaintiff was declared eligible to compete in paralympic archery competitions.

37. Approximately two years later, the WFA conducted another classification session and gave Plaintiff a score of thirty-two points.

38. Because Plaintiff exceeded the twenty-five point threshold, the WFA found that she was eligible to compete in paralympic archery competitions.

39. On April 6, 2015, the WFA conducted another classification session and gave Plaintiff a score of thirty-three points.

40. Because Plaintiff exceeded the twenty-five point threshold yet again, the WFA found that she was eligible to compete in paralympic archery competitions.

41. Plaintiff was given "confirmed status" in her April 6, 2015 classification session.

42. Under the IPC Code, "confirmed status" is assigned only when a classification panel determines that the athlete's classification ***will not change***.

43. Athletes who are assigned "confirmed status" are no longer required to complete evaluations prior to competing at international competitions unless a protest is lodged.

44. According to the IPC Code, a protest may be lodged only in "exceptional circumstances."

45. The IPC Code defines "exceptional circumstances" as a change in the degree of impairment of an athlete, the demonstration by an athlete of significantly less or greater ability prior to or during competition, an error by a prior classification panel, or a change in the evaluation criteria .

46. Four months after she was given "confirmed status," Plaintiff traveled to Toronto, Canada for the 2015 Parapan Am Games.

47. Upon arriving, a member of the WAF's classification committee, Kim-Fong Pang ("Pang"), informed Plaintiff that her disabled status was being challenged by the committee.

48. Pang told Plaintiff that her disabled status was being challenged because she now wore leg braces, which Pang contended Plaintiff had not worn in the past.

49. In fact, Plaintiff has wore these leg braces for several years, ***including during all three previous classification sessions***.

50. Plaintiff did not receive any advance notice that her disabled status would be challenged at this event.

51. After informing Plaintiff that her classification was being challenged, Pang and another classifier performed a classification examination.

52. Pang and the other classifier determined that Plaintiff only accumulated twenty-three points, even though she had accrued thirty-three points just a few months earlier.

53. Twenty-three points falls below the twenty-five point threshold required to compete in paralympic archery competitions.

54. Due to this ruling, Plaintiff could no longer compete in paralympic archery events.

55. There were no "exceptional circumstances" that justified a challenge to Plaintiff's "confirmed status" as a paralympic athlete.

56. Plaintiff's medical condition did not, and could not, improve from April 2015 to August 2015 because she has chronic and degenerative diseases that only worsen with time.

57. She did not demonstrate significantly less or greater physical ability in August 2015 than she did in April 2015.

58. The April 2015 classification did not err in its classification, especially since two previous classifications panels had made the same ruling.

59. WAF's criteria for classification testing standards did not change between April 2015 and August 2015.

60. The result of the August 2015 classification was dramatically different from the three previous classifications that Plaintiff underwent in 2012, 2014, and April 2015.

61. In those three previous classifications, Plaintiff exceeded the twenty-five point threshold and could compete as a paralympic athlete.

62. In the August 2015 classification, she fell below the twenty-five point threshold and could no longer compete as a paralympic athlete even though the testing criteria did not change.

63. This classification by WAF has been adopted by all other national and international bodies, including USAA and USOC.

64. Plaintiff contacted the United States Olympic Committees' Ombudsman Office ("the Ombudsman Office") the same day that her classification was changed.

65. The purpose of the Ombudsman Office is to offer free, confidential, and independent advice regarding opportunities and rights to participate in

protected competition, and the various policies and procedures associated with participating in sport at an elite level.

66.  The Ombudsman Office told Plaintiff that she had no recourse unless her medical condition worsened.

67.  On February 24, 2016, Plaintiff submitted a new medical intake form to the WAF after being diagnosed with multilevel degenerative cervical spondylosis and undergoing another cervical spine fusion surgery.

68.  Plaintiff received no response to her intake form.

69.  On April 22, 2016, Plaintiff emailed the Head Classifier of the WAF, seeking an update on her status.

70.  Two days later, the WAF denied her request in a brief email.

71.  Due to WAF's improper decision to compel Plaintiff to undergo a reclassification examination despite her confirmed status, Plaintiff has suffered severe and direct harm.

72.  Plaintiff is now permanently barred from participating in all paralympic archery competitions.

73.  Plaintiff cannot compete in the Parapan Am Games.

74.  Plaintiff cannot compete in the World Championships.

75.  Plaintiff cannot compete in the Arizona Cup.

76.  Plaintiff has lost her Team U.S.A. status, and the associated monetary stipend.

77.  Plaintiff last lost her health insurance that was paid for by the USOC.

78.  Plaintiff has lost revenue for personal appearances as a member of Team U.S.A.

79.  Plaintiff has lost the ability to obtain other sponsorships.

80.  Plaintiff's non-eligible status also threatens her existing sponsorships.

81.  Plaintiff cannot compete in the 2016 Paralympic Games in Rio De Janeiro, Brazil, or any of the qualifying events.

82. Plaintiff planned to attempt to qualify for the 2016 Paralympic Games by competing in the Paralympic Archery Trials on May 14, 2016 in Chula Vista, California.

83. Plaintiff cannot compete in the 2016 Paralympic Games unless she is able to participate in the Paralympic Archery Trials on May 14, 2016 in Chula Vista, California.

84. The unilateral decision of Pang, acting as a representative of the WAF, to reclassify Plaintiff was arbitrary and capricious, especially given that she had received confirmed status just a few months earlier.

85. The WAF's rules do not provide any means for Plaintiff to appeal its decision, even though it directly and dramatically affects her status as a paralympic athlete and, as a result, her employment status.

86. Since the improper reclassification, Plaintiff has repeatedly contacted WAF, USAA, and USOC in an attempt to have her classification changed.

87. These requests have either been ignored or denied, most recently at the end of April, 2016.

88. None of the Defendants' officials explained or suggested any means for Plaintiff to regain her status, other than allowing her physical condition to deteriorate.

89. Plaintiff thus believed – until very recently – that there was no possible way to regain her disabled status.

90. WAF's arbitrary and capricious decision to revoke her disability status has violated Plaintiff's constitutional rights.

91. In accepting WAF's arbitrary and capricious decision regarding Plaintiff's disability classification, USAA and the USOC have also violated Plaintiff's constitutional rights.

WHEREFORE, Plaintiff Eileen Ford-Faherty respectfully requests that this

court issue a preliminary injunction pursuant to Fed. R. Civ. P. 65, ordering that defendants World Archery Federation, USA Archery, and the United States Olympic Committee refrain from preventing her from competing in the Paralympic Archery Trials on May 14, 2016 in Chula Vista, California, and allow her to compete under the disability status she received in April 2015 until a final determination regarding her disability status is made under the Ted Stevens Olympic and Amateur Sports Act, 36 U.S.C. §220501 *et seq*.

Dated: May 12, 2016

Respectfully submitted,

Jones Day

By: *s/ Mhairi L. Whitton*
Shireen M. Becker
Mhairi L. Whitton
Michael F. Gosling

Counsel for Plaintiff
EILEEN FORD-FAHERTY